IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHEILA LYNN TRIPLETT,<br><br>Plaintiff,<br><br>vs.<br><br>SELDIN COMPANY, ALICIA CLARK, CEO; JENNY CLAYTON, SVP; ASHLEY MCKIBBIN, Local Manager; SHERI WARE, Regional Portfolio Managers; and ERICA COATE, Regional Portfolio Manager;<br><br>Defendants. | 8:23CV185<br><br>**MEMORANDUM AND ORDER** |

Plaintiff filed a Complaint on May 11, 2023.  Filing No. 1.  Plaintiff has been given leave to proceed in forma pauperis.  Filing No. 6.  The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

**I. SUMMARY OF COMPLAINT**

Plaintiff sues Seldin Company ("Seldin") and five Seldin employees—Chief executive Officer Alicia Clark ("Clark"), Senior Vice President Jenny Clayton ("Clayton"), Local Manager Ashley McKibbin ("McKibbin"), and Regional Portfolio Managers Sheri Ware ("Ware") and Erica Coate ("Coate")—for claims arising out of Plaintiff's rental of an apartment within the Forest Acres Apartments ("Forest Acres") in South Sioux City, Nebraska.  Seldin "is a for-profit, federally funded, limited liability management corporation in Nebraska . . . focused on managing Section 8 multi-family housing projects" and manages Forest Acres, the public subsidized housing where Plaintiff lives. Filing No. 1 at 6 (punctuation altered from original).

In May 2017, Plaintiff applied for an apartment at Liberty Place, a different property managed by Seldin, and was told an apartment was available for her. However, after Plaintiff told McKibbin that Plaintiff was disabled, McKibbin said there were no apartments at Liberty Place for which Plaintiff qualified, but McKibbin had an apartment available at a different complex, Forest Acres, that's for disabled people only. McKibbin told Plaintiff, "You will fit well there because you're disabled [and] everyone out there is disabled too!" *Id*. at 49 (spelling corrected). Plaintiff is disabled due to being "diagnosed with ADHD, OCD, PTSD, Bipolar disorder, Borderline Personality disorder, depression, generalized anxiety with panic attacks, eating disorder, [and] specific phobia disorder ([her] phobia is bugs . . . )." *Id*. at 8. Plaintiff alleges McKibbin lied to her and coerced Plaintiff into moving into Forest Acres instead of Liberty Place and that McKibbin's actions were discriminatory. *Id*. at 49.

Plaintiff moved into Unit 14 at Forest Acres, an apartment unit with only two windows like the majority of the units within Forest Acres. Three units within Forest Acres have two additional windows, and Plaintiff made three requests to transfer to one of these three units as a reasonable accommodation for her disability as she "needed to let light in to help ease [her] depression [and] anxiety some." *Id*. at 43. Plaintiff made her first accommodation request in April 2019 when an accessible unit became available, but Defendants denied her request "with no discussion." *Id*. at 49. On December 15, 2020,[1] Plaintiff made another accommodation request with McKibbin because another accessible unit became available. Plaintiff alleges McKibbin asked Plaintiff for details regarding her disabilities and talked about her reasonable

---

[1] Plaintiff's Complaint mistakenly lists this date as "Dec. 15, 2021," but based on Plaintiff's timeline of events, the correct date is clearly December 15, 2020. *See* Filing No. 1 at 49.

2

accommodation request and her disabilities with other Forest Acres tenants, which embarrassed Plaintiff. *Id*. Plaintiff also alleges Seldin unnecessarily required Plaintiff to verify she is disabled and follow Seldin's formal procedure in order to be approved for a reasonable accommodation. Specifically, Seldin required Plaintiff to fill out two forms and "answer humiliating questions about [her] disabilities," and Seldin contacted Plaintiff's therapist asking for medical records and information about Plaintiff's disabilities, which the therapist did not supply. *Id*. On February 1, 2021, Seldin denied Plaintiff's reasonable accommodation request because Plaintiff did not return the required forms in time, and Seldin rented the accessible unit to someone else. *Id*. at 50.

Though unclear, it appears Plaintiff tried unsuccessfully to contact Clark at Seldin's corporate offices but was put in touch with Ware instead regarding the denial of her reasonable accommodation request. *Id*. Thereafter, on February 19, 2021, Plaintiff signed a new lease to transfer to Unit 16, an accessible unit with extra windows to help with Plaintiff's disabilities. McKibbin did not do a move-in/move-out walk through with Plaintiff in both Unit 14 and Unit 16, did not allow Plaintiff to read the lease before signing, and did not provide Plaintiff with a copy of the lease. McKibbin indicated she was in a hurry to leave for another property in Yankton, South Dakota, and told Plaintiff she would mail Plaintiff a copy of the lease; McKibbin never did mail Plaintiff a copy. *Id*.

When Plaintiff moved into Unit 16, she found the apartment to be "[n]ot livable, extremely unsafe [and] unsanitary." *Id*. Plaintiff knew the former tenant of Unit 16, who passed away in the apartment in December 2020, never cleaned, smoked heavily, and babysat her eight grandchildren in the apartment every day for nine years. Plaintiff alleges Seldin did not have Unit 16 properly cleaned before Plaintiff moved in as there

3

was "dirt, dust, grime, bugs, feces, human waste, human blood, cigarette smoke [and] cigarette tar in [and] on everything, etc." *Id*. at 9.  Other "dangerous and unsanitary conditions" included toxic mold, "[c]onstant standing water from inadequate plumbing"; "[n]o usable kitchen, no usable stove/oven, nowhere to prepare, cook or store food"; "[u]nsecured, deteriorating enter/exit door, no reliable lock"; "[f]ailing appliances and fixtures, no outlet covers"; "[i]nadequate air conditioning and heat"; "[v]ermin living in the walls"; and inoperable windows with ripped, torn screens, and bent and rusted window tracks "filled with filth, dead bugs[,] 12 inches [and] more of human waste, dirt [and] grime, bugs, etc." *Id*. at 18.

Plaintiff alleges McKibbin moved Plaintiff into Unit 16 in these conditions in retaliation for Plaintiff "contacting corporate [and] the city of South Sioux City, Nebraska" and "was trying to create unfavorable conditions to get me to abandon the rental agreement."  *Id*. at 50.  Plaintiff also was given only from February 19, 2021, to February 22, 2021, to move all of her belongings from Unit 14 to Unit 16.  Both Ware and McKibbin told Plaintiff that it was "HUDS[2] policy as well as Seldin Company's policy" to only allow two days to transfer between units and that Plaintiff also would have to pay rent on both units as long as she held the keys to both units.  *Id*. at 50, 82, 84.  Clayton later concurred with Ware and McKibbin's representations saying:

> In regards to the days you're being charged the market rate, it is HUD's guidance that market rent be charged directly to the tenant on BOTH units until the physical move is completed.  You signed the lease for 02/19/2021 and we gave you the weekend to move your belongings.  We didn't start charging you market rent until 02/23/2021 which is 4 days after you signed your lease.  We normally only give 2 days.

---

[2] The Court understands "HUD" to mean the U.S. Department of Housing and Urban Development.  *See* https://www.hud.gov/.

4

Filing No. 1-1 at 18. Between February 22 and March 5, 2021, Plaintiff was moving between units in cold, icy, terrible weather, and she suffered several falls and serious injuries in the process. Filing No. 1 at 51.

Plaintiff alleges McKibbin repeatedly harassed Plaintiff from March 1 through April 23, 2021, for the extra fee payments through notices taped to her door, letters, and emails. *Id*. When Seldin did not get a response from Plaintiff, Seldin "called [Plaintiff's] elderly parents, lied to them and demanded they pay this money $357.38 [and her] elderly parents did; they wrote a check made out to Seldin company [and] sent it to the corporation." *Id*. (punctuation altered from original). Plaintiff alleges she did not legally have to pay this money and Seldin was wrong to keep her elderly parents' payment.

Plaintiff submitted her first written request for maintenance to McKibbin and Seldin on February 22, 2021, identifying all the issues that required remediation. *Id*. at 51, 86–87. Plaintiff submitted three other written maintenance requests to McKibbin and/or Seldin between March and November 2021. *Id*. at 52, 56. Plaintiff also informed McKibbin, Ware, Clayton, and Clark of Unit 16's condition and the need for repairs and maintenance in both email and telephone communications. Filing No. 50, 52–54. Clark personally visited Plaintiff's apartment on June 21, 2021, and made promises to repair and replace several items, including "new oven/stove, new cupboards/countertop [and] new kitchen sink, new shower/tub, new front door, screens on the windows [and] a landscaper for the trees, kilz to be used [and] then painted [and] carpet and it to be exterminated by a professional, everything that should have been done before [Plaintiff] moved in." *Id*. at 54. Clark also took notes and "a picture of the black mold" because of which Plaintiff is "now using an inhaler . . . , [though she] never had an inhaler before."

*Id*. Defendants have not completed any of the maintenance on Plaintiff's apartment, and Plaintiff states she has not stayed in her apartment since November 2021, though she continues to visit the apartment periodically and pays rent.

As relief, Plaintiff seeks damages, a declaration that Defendants' discriminatory conduct violates the Fair Housing Act, and injunctive relief enjoining Defendants' discriminatory housing practices. *Id*. at 68–72.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." Topchian, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. ANALYSIS

#### A. Defendants' Personal Involvement

The Complaint's caption includes five individual Defendants—Clark, Clayton, McKibbin, Ware, and Coate. In the body of the Complaint, Clark, Clayton, McKibbin, and Ware are all alleged to have engaged in some kind of misconduct. However, there are no factual allegations regarding Coate anywhere within the body of the Complaint. Coate is only included in the list of Defendants who Plaintiff alleges, in conclusory fashion, "have violated federal laws, recklessly [and] intentionally caused [Plaintiff] severe physical, mental, psychological, spiritual, [and] emotional damage." Filing No. 1 at 6.

"A complaint that only lists a defendant's name in the caption without alleging that the defendant was personally involved in the alleged misconduct fails to state a claim against that defendant." Banks v. New York Police Dep't, No. 4:15CV3012, 2015 WL 1470475, at *2 (D. Neb. Mar. 31, 2015); see also Krych v. Hvass, 83 Fed. Appx. 854,

7

855 (8th Cir. 2003) (unpublished) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (holding that court properly dismissed pro se complaint where complaint did not allege that defendant committed specific act and complaint was silent as to defendant except for his name appearing in caption)). Accordingly, Defendant Coate will be dismissed without prejudice from this action because the Complaint fails to state a claim against her.

**B. Fair Housing Act and Rehabilitation Act Claims**

Liberally construed, Plaintiff asserts claims under the Fair Housing Act ("FHA"), as amended, 42 U.S.C. § 3601–3619, and the Rehabilitation Act, 29 U.S.C. § 794. Filing No. 1 at 5, 59.[3] The FHA "prohibits discrimination, based on handicap, against any person with respect to the rental of a dwelling or the provision of related services or facilities." *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363 (8th Cir. 2003) (citing 42 U.S.C. § 3604(f)(2)). "The Rehabilitation Act prohibits discrimination 'under any program or activity receiving [F]ederal financial assistance' against any otherwise qualified individual with a disability, solely because of his disability." *Id.* (quoting 29 U.S.C. § 794(a)). A person subjected to discrimination in violation of the FHA or the Rehabilitation Act can bring a private cause of action for damages. 42 U.S.C. § 3613; *Neudecker*, 351 F.3d at 363 (*citing Rodgers v. Magnet Cove Pub. Schs.*, 34 F.3d 642, 643–45 (8th Cir. 1994) (Rehabilitation Act provides for damages claim for disability discrimination)). "[A]n action brought for compensation by a victim of housing

---

[3] Liberally construed, Plaintiff may also assert claims under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et seq. See* Filing No. 1 at 59 (citing to 42 U.S.C. § 12203 as a basis for federal question jurisdiction). However, the Complaint fails to allege a claim under the ADA because Plaintiff's "claims describe a private dispute about the timeliness of repairs and different rental charges at her apartment, and do not affect any of the areas of public life covered by the ADA." *Barbero v. TLC Prop. Mgmt., LLC*, No. 19-03171-CV-S-DPR, 2019 WL 2396578, at *1 (W.D. Mo. June 6, 2019).

discrimination is, in effect, a tort action." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Liberally construed, Plaintiff's Complaint suggests retaliation, failure to make reasonable accommodations, disparate-treatment, and harassment claims.

### 1. Retaliation

Both the FHA and the Rehabilitation Act allow a plaintiff to recover for retaliation. *See Neudecker*, 351 F.3d at 363–64. The FHA specifically provides a civil remedy and "prohibits retaliation against any person on account of his having exercised or enjoyed a right granted or protected by the FHA." *Gallagher v. Magner*, 619 F.3d 823, 838 (8th Cir. 2010). The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . , any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Unlawful conduct under section 3617 includes "[r]etaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority." 24 C.F.R. § 100.400(c)(6). "To state a claim for retaliation under the FHA, Plaintiff must show: (1) [she] engaged in a protected activity; (2) Defendant was aware of the activity; (3) Defendant took adverse action against [Plaintiff]; and (4) there is a causal link between the adverse action and the protected activity." *United States v. Edmunds*, No. 15-CV-2705, 2016 WL 7670605, at *4 (D. Minn. Dec. 6, 2016), *report and recommendation adopted*, No. CV 15-2705, 2017 WL 102964 (D. Minn. Jan. 10, 2017). "Protected activity can include requesting a reasonable accommodation, protesting discriminatory housing practices, or opposing practices the plaintiff reasonably and in good faith believed amounted to discriminatory

housing practices." *Kris v. Dusseault Fam. Revocable Tr.*, 594 F. Supp. 3d 333, 341 (D.N.H. 2022).

Similarly, to prevail on a claim for retaliation under the Rehabilitation Act, "[Plaintiff] must prove that [s]he was engaged in a 'protected activity.'" *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir. 2000). "[T]o be engaged in a protected activity under the Rehabilitation Act, [Plaintiff] must have been protesting what [s]he perceived as discriminatory acts." *Id.* at 410.

Plaintiff alleges McKibbin purposely moved her into Unit 16 in its unsanitary and unlivable state because Plaintiff had contacted Seldin's corporate office and the city of South Sioux City, Nebraska (the "City"), regarding the denial of Plaintiff's request for a reasonable accommodation. Plaintiff also alleges that Clark is retaliating against her for contacting the City and has left Plaintiff in the unsafe and unsanitary conditions, despite Clark's personal observation of the dangers. Plaintiff further alleges Defendants continue to ignore Plaintiff's written and verbal maintenance requests and leave her in the unsafe and unsanitary conditions in order to get Plaintiff to break or abandon the rental agreement. *See* Filing No. 1 at 45, 50.

These allegations, taken as true, assert that Plaintiff engaged in protected activity by complaining to Defendants and the City regarding the denial of her reasonable accommodation request and maintenance issues; that Defendants were aware of this protected activity; and that Defendants moved Plaintiff into Unit 16 in an unlivable condition and have purposely failed to correct any of Unit 16's maintenance issues in order to get Plaintiff to break the lease. The Court finds these allegations are sufficient to state a plausible claim of retaliation under the FHA and Rehabilitation Act. *See, e.g.,*

*Neudecker*, 351 F.3d at 363 (plaintiff's assertion that landlord threatened to evict him as reprisal for his complaint that tenants were engaging in disability harassment was sufficient to allege retaliation claim under FHA and Rehabilitation Act).

### 2. Failure to Make Reasonable Accommodation

The FHA forbids discrimination "in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter" and "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap[4] of" the buyer or renter, a person residing in or intending to reside in the dwelling, or any person associated with the buyer or renter. 42 U.S.C. § 3604(f)(1) & (f)(2). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

Liberally construed, Plaintiff alleges Defendants failed to make reasonable accommodations for her handicap when they denied her reasonable accommodation request three times. Filing No. 1 at 43. A claim for failure to make a reasonable accommodation requires Plaintiff to show: "(1) [s]he . . . is handicapped within the meaning of § 3602([h]) and the defendant knew or should have known of this fact; (2) an accommodation may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (3) such accommodation is reasonable; and (4) the defendant refused to make the requested accommodation." *Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc.*, 778 F. Supp. 2d 1028, 1037 (D.N.D. 2011)

---

[4] "Handicap" for purposes of the FHA means "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h).

(citing *Astralis Condominium Ass'n v. Sec'y, U.S. Dept. of Housing & Urban Development*, 620 F.3d 62, 67 (1st Cir.2010); *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir.2006)).

Plaintiff sufficiently alleges she is handicapped within the meaning of the FHA and that Defendants were aware of her handicap as she specifically informed McKibbin that she was "disabled." Filing No. 1 at 8, 49. Thus, Plaintiff's allegations satisfy the first element of a failure to make a reasonable accommodation claim. As to the second and third elements, Plaintiff sufficiently alleges that her requested accommodation for an available "accessible unit," meaning one of the three units with two additional windows, was a reasonable accommodation for her disability as she "needed to let light in to help ease [her] depression [and] anxiety some." *Id*. at 43.

As to the fourth element, Plaintiff alleges Defendants denied her request for an accessible unit three times. However, Plaintiff's allegations affirmatively establish that she was permitted to transfer to an accessible unit in February 2021. Thus, Plaintiff cannot establish that Defendants refused to make her requested accommodation of transfer to an accessible unit and her claim premised on this accommodation request fails.

### 3. Disparate Treatment

Liberally construed, Plaintiff alleges disparate-treatment claims based on Defendants coercing Plaintiff to move into Forest Acres instead of Liberty Place after learning of Plaintiff's disabilities and Defendants' actions surrounding her transfer to and tenancy in Unit 16. "Disparate-treatment claims under the FHA are tested under the same framework as Title VII disparate-treatment claims." *Gallagher*, 619 F.3d at 831

(citing *Ring v. First Interstate Mortgage, Inc.*, 984 F.2d 924, 926 (8th Cir. 1993) (applying the three-stage Title VII analysis to a FHA disparate treatment claim)). "Disparate treatment analysis focuses on whether the defendant treated the plaintiff less favorably than others." *Fair Hous. of the Dakotas, Inc.*, 778 F. Supp. 2d at 1037 (citing *Gallagher*, 619 F.3d at 831). "Proof of discriminatory purpose is crucial for a disparate treatment claim," with a plaintiff being required to "produce either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent under the *McDonnell Douglas*[5] burden-shifting framework."[6] *Gallagher*, 619 F.3d at 831.

Similarly, to establish a prima facie case of discrimination under the Rehabilitation Act, Plaintiff must show: (1) that she is a qualified individual with a disability; (2) that she was denied the benefits of a program or activity that receives federal funds; and (3) that she was discriminated against based on her disability.[7] *Estate of Barnwell by and through Barnwell v. Watson*, 880 F.3d 998, 1004 (8th Cir. 2018).

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[6] If the burden-shifting framework is applied, Plaintiff must make a prima facie showing of discrimination by a preponderance of the evidence. *See McLain v. Andersen Corp.*, 567 F.3d 956, 967 (8th Cir. 2009) (setting forth burden-shifting analysis for disability-discrimination claim).

> To establish a prima facie case under § 3604(f), [Plaintiff] must show that she was denied housing or not offered the same terms, conditions or privileges of rental under circumstances that give rise to a reasonable inference of unlawful discrimination. If [Plaintiff] sets forth a prima facie case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for their actions. The burden then shifts back to [Plaintiff] to demonstrate that Defendants' justification is pretextual.

*Groteboer v. Eyota Econ. Dev. Auth.*, 724 F. Supp. 2d 1018, 1023 (D. Minn. 2010) (internal citations omitted).

[7] The Rehabilitation Act uses the ADA's definition of "disability," which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual"; "a record of such an impairment"; or "being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also* 29 U.S.C. § 705(20)(B).

13

Plaintiff alleges she is disabled within the meaning of the FHA and Rehabilitation Act, *see* Filing No. 1 at 8; that Seldin receives federal funding related to its management of "Section 8 multi-family housing projects," *Id*. at 6 (punctuation altered from original); that Seldin lied to Plaintiff about the availability of an apartment at Liberty Place after learning Plaintiff was disabled, *Id*. at 5; and that Seldin applied "different terms and conditions of rental based on disability" by requiring Plaintiff to "follow Seldin's required formal procedure" for her accommodation request, "refus[ing] to waive full market rent" for each day it took Plaintiff to transfer between units "because [she is] disabled", allowing Plaintiff only two days to complete her transfer, and failing to take any corrective action regarding the unsafe and unsanitary conditions of Unit 16, *Id*. at 43, 51. Plaintiff further alleges facts suggesting that the unsanitary condition of Unit 16 exacerbated her existing mental impairments, particularly her phobia disorder; that Defendants knew about the detrimental effects on Plaintiff's impairments caused by Unit 16's unsanitary condition; and that Defendants purposely have failed to respond to any of Plaintiff's maintenance requests to get Plaintiff to abandon her lease. *See, e.g.*, *Id*. at 5, 54–57, 81. Given the liberal construction afforded to pro se litigants' pleadings, the Court finds Plaintiff has alleged sufficient facts to allow her disparate-treatment claims to proceed forward at this juncture.

### 4. *Harassment*

Plaintiff also alleges McKibbin and Seldin harassed Plaintiff for payment of the full market rent fees related to Unit 14, which Plaintiff alleges she did not legally have to pay and Seldin only charged to Plaintiff "because [she is] disabled." Filing No. 1 at 51. "[D]isability harassment in the housing context is actionable under the FHA and the

Rehabilitation Act . . . ." *Neudecker*, 351 F.3d at 364. To state a disability harassment claim, Plaintiff must allege she is disabled, that Defendants subjected her to unwelcome harassment based on her disability, and that this unwelcome harassment was sufficiently severe to deprive Plaintiff of her right to enjoy her home. *Id*.

Plaintiff alleges McKibbin repeatedly harassed Plaintiff from March 1 through April 23, 2021, for the extra fee payments through notices taped to her door, letters, and emails. Filing No. 1 at 51. Plaintiff claims McKibbin's "communication was intended to harass [and] pressure [Plaintiff]"; that Seldin "knew or should have known that they could not legally charge me extra fees for [her] reasonable accommodation because [Plaintiff is] disabled"; and Defendants' acts "were done intentionally, intending to cause [Plaintiff] to suffer mental anguish, embarrassment, humiliation, and extreme mental suffering." *Id*. Plaintiff further alleges that as a result of this harassment she rushed to complete her move between units in the cold, icy weather and injured herself severely in the process due to numerous falls.

Applying the most liberal construction to Plaintiff's allegations, the Court determines that Plaintiff has sufficiently alleged a disability harassment claim under the FHA and Rehabilitation Act, and this claim may proceed to service of process along with Plaintiff's retaliation and disparate-treatment claims.

## C. State-Law Claims

Finally, Plaintiff alleges various state-law claims against Defendants including breach of implied warranty of habitability, nuisance, and intentional infliction of emotional distress. At this time, the Court makes no finding with respect to its jurisdiction over these claims or whether they state a claim upon which relief may be

granted. In order to ensure a just and fair resolution of this matter, Plaintiff's state-law claims will be allowed to proceed to service of process against Seldin, Clark, Clayton, McKibbin, and Ware, along with the FHA and Rehabilitation Act claims detailed above.

## IV. MOTION TO APPOINT COUNSEL

With her Complaint, Plaintiff filed a motion seeking the appointment of counsel. Filing No. 3. "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). *See also* 42 U.S.C. § 3613(b)(1) ("Upon application by a person alleging a discriminatory housing practice . . . , the court may—(1) appoint an attorney for such person."). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)). Moreover, "[t]he appointment of counsel 'should be given serious consideration . . . if the plaintiff has not alleged a frivolous or malicious claim' and the pleadings state a prima facie case." *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992) (quoting *In re Lane*, 801 F.2d 1040, 1043 (8th Cir.1986) (internal quotation omitted)).

Here, the Court has concluded that Plaintiff has alleged sufficient facts to state claims for relief under the FHA and the Rehabilitation Act. The Court's conclusion is based on a very liberal construction of the Complaint in recognition of Plaintiff's self-

professed difficulties in presenting her claims due to a brain injury and her mental illnesses. *See* Filing No. 1-1 at 28; Filing No. 3. Plaintiff represents in her motion that she has tried for over a year to find an attorney, but she has been rejected by Legal Aid due to "lack of funding" and attorneys have declined to represent her because "they don't have the time, . . . they don't do federal, they don't practice in the areas that I need, they don't help in" Plaintiff's "geographical area" or "they just don't have the time to help someone like [Plaintiff], who is disabled and has a complex case and no money." Filing No. 3 at 2. Given Plaintiff's statements in her pleadings and motion, it is evident that Plaintiff's ability to present her claims, at least past the initial review stage, is hindered due to her physical and mental health issues. Accordingly, the Court concludes that Plaintiff and the Court would benefit from the appointment of counsel at this stage in the matter. Counsel is appointed as set forth below.

## V. CONCLUSION

Keeping in mind the liberal construction due pro se complaints and the lesser pleading standard to which pro se litigants are held, the Court concludes, for purposes of initial review, that Plaintiff has alleged plausible claims under the FHA and Rehabilitation Act for retaliation, disparate treatment, and harassment. These federal claims will be allowed to proceed to service of process, along with Plaintiff's state-law claims, against the Defendants, with the exception of Coate, who will be dismissed from this action without prejudice. Plaintiff's failure to make a reasonable accommodation claim will be dismissed without prejudice to amendment for failure to state a claim upon which relief may be granted.

Accordingly, this matter will proceed to service of process, and the Court will appoint counsel to assist Plaintiff with the prosecution of this case. The Court cautions Plaintiff, however, that allowing her claims to proceed to service of process is not a determination of the merits of her claims or potential defenses to them.

IT IS THEREFORE ORDERED that:

1. Defendant Erica Coate is dismissed as a party to this action without prejudice.

2. Plaintiff's claim for failure to make a reasonable accommodation is dismissed without prejudice to amendment.

3. This case shall proceed to service of process as to Plaintiff's claims under the FHA and the Rehabilitation Act for retaliation, disparate treatment, and harassment, and as to Plaintiff's state-law claims.

4. The Clerk of the Court is directed to complete and issue summonses for **Defendants Seldin Company, Alicia Clark, Jenny Clayton, and Sheri Ware at 2840 S. 123rd Court, Omaha, Nebraska 68144,** and **Defendant Ashley McKibbin at 800 W. 25th Street, South Sioux City, Nebraska 68776**. The Clerk of the Court is further directed to deliver the summonses, the necessary USM-285 Forms, copies of Plaintiff's Complaint, Filing No. 1, and this Memorandum and Order to the Marshals Service for service of process on Defendants Seldin, Clark, Clayton, Ware, and McKibbin.[8] Service may be accomplished by using any of the following methods: personal, residence,

---

[8] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).

certified mail, or designated delivery service. See Federal Rule of Civil Procedure 4(e), (h); Neb. Rev. Stat. § 25-508.01; Neb. Rev. Stat. § 25-509.01.

5. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

6. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

7. The Clerk of Court is directed to set a case management deadline using the following text: **June 24, 2024**: deadline for service of process.

8. Plaintiff's Motion to Appoint Counsel, Filing No. 3, is granted.

9. With thanks for accepting the appointment, Joy Shiffermiller and the Shiffermiller Law Office is hereby appointed to represent Plaintiff Sheila Lynn Triplett in this matter.[9]

10. Joy Shiffermiller is directed to promptly enter her appearance as counsel in this case.

11. Upon entry of counsel's appearance in CM/ECF, the Clerk of Court shall immediately pay from the Federal Practice Fund the sum of $1,000 to the Shiffermiller Law Office.

12. A second and last installment of $1,000 shall become due and payable to the Shiffermiller Law Office upon the entry of judgment or other closing documents in the case.

---

[9] The undersigned has been authorized by the Chief Judge to appoint counsel pursuant to the Amended Plans for the Administration of the Federal Practice Fund and the Federal Practice Committee.

13. Subject to the prior approval of the Court, counsel may incur reasonable expenses when representing Plaintiff in accordance with the Amended Plans for the Administration of the Federal Practice Fund and the Federal Practice Committee. *See also* NEGenR 1.7(g) and NECivR 54.3-54.4.

14. Should Plaintiff succeed, and counsel be awarded attorney fees and expenses that exceed $2,000 plus expenses, counsel shall reimburse the Federal Practice Fund for the fees and expenses paid from the fund.

15. Counsel for Plaintiff is appointed to assist Plaintiff with the prosecution of her claims and through trial if this case should proceed to trial. The appointment will not extend to any appeal after trial.

16. The Clerk of Court is directed to send a copy of this Memorandum and Order to Plaintiff and Plaintiff's appointed counsel.

17. Because this non-prisoner case is proceeding to service of process and counsel has been appointed, this case is removed from the pro se docket at the direction of the Court. The Clerk's office shall randomly assign new judges to this case and request a reassignment order from the Chief Judge.

Dated this 25th day of March, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge